MICHAEL L. BECKER
Nevada Bar No. 8765
ADAM M. SOLINGER
Nevada Bar No. 13963
LAS VEGAS DEFENSE GROUP, L.L.C.
2970 W. Sahara Avenue
Las Vegas, NV 89102
Telephone - (702) 333-3673
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | CASE NO.: 2:25-mj-00261-EJY |
| | ) | |
| Plaintiff, | ) | **MOTION FOR DISTRICT JUDGE** |
| | ) | **REVIEW OF MAGISTRATE** |
| vs. | ) | **JUDGE'S DETENTION ORDER** |
| | ) | |
| | ) | |
| **PAUL HYON KIM**, | ) | **[Expedited Briefing and Hearing** |
| | ) | **Requested]** |
| Defendant. | ) | |
| | ) | |

Defendant PAUL KIM, by and through his counsel Michael L. Becker and Adam M. Solinger, respectfully moves this Court, pursuant to 18 U.S.C. §3145(b), to revoke the order of detention entered in this case on March 31, 2025 and instead to order that Mr. Kim be released pending trial under the strict conditions proposed by the Pretrial Services Report.

1

**MEMORANDUM of POINTS and AUTHORITIES**

I.     BACKGROUND

  **A.     Mr. Kim has significant family ties that would assure he poses no danger to the community.**

  Mr. Kim has significant ties to his family. His parents readily traveled to Las Vegas upon request to be present for his continued detention hearing. His mother, Seung Joo Kim, testified that Mr. Kim had traveled home to Seattle for Christmas in December, staying thorough the new year. He had also visited in June on 2024, which is objectively frequent considering that he is in his thirties living independently more than one thousand miles away.

  Despite the Pretrial Services Report assertions[1], Mr. Kim reports that he plays online video games with his brother Phillip around four to five times per week. During those games, he uses a video chatting service to see and communicate with his brother during those games. Additionally, Mr. Kim and his mother will frequently had video conversations during those gaming sessions. While Mr. Kim's mother Seung was examined by Magistrate Youchah, as will be explained below in more detail, she speaks Korean and her translator at the detention hearing was not adequately translating for her. This can be seen when she seemed to not understand undersigned counsel's questions attempting to clarify her statements to the PSR writer.

  **B.     The government charges Mr. Kim with Unlawful Possession of an Unregistered Destructive Device and Arson.**

  On March 27, 2025, the government filed a complaint against Mr. Kim charging him with Unlawful Possession of an Unregistered Destructive Device and Arson. The government

---

[1] Pretrial Services Report ("PSR"), p. 1. It should be noted that Pretrial Services did not utilize an interpreter when speaking with MOM'S FORMAL NAME, which has clearly lent itself to some confusion.

alleges that Mr. Kim unlawfully possessed a destructive device and that he lit five Tesla vehicles on fire.

**C.    Mr. Kim is ordered to be detained but the Magistrate initially contemplated releasing him.**

During the first portion of the detention hearing, the Magistrate contemplated releasing Mr. Kim if there was a suitable third-party custodian such as Mr. Kim's mom, Seung. While the Magistrate made sure to note that there were no promises or guarantees, it appears that the Court contemplated it. When the detention hearing resumed, Seung was sworn and questioned. It became clear that the Korean translator was not translating live and instead appeared to be paraphrasing. Because of this, the Magistrate appeared to find Seung's testimony contradictory because she reported she "barely talks" to Mr. Kim but then testified that she talks to him frequently. Had Seung had an adequate translator, the Magistrate would have learned that while Mr. Kim does not frequently directly call his mother, they instead talked more frequently while he video chatted with his brother Phillip during their online gaming sessions.

**II.    Argument**

**A.  Standard of Review**

This Court reviews the magistrate judge's order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–92 (9th Cir. 1990). "If a person is ordered detained by a magistrate judge . . . the [detained] person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). This Court has original jurisdiction over Mr. Kim's case and therefore should review the detention motion.

This Court must review the evidence presented to the magistrate judge and make "its own independent determination whether the magistrate [judge's] findings are correct, with no deference" to either the magistrate judge's factual findings or ultimate conclusions regarding the propriety of detention. *Koenig*, 912 F.2d at 1191–92. This Court may hold an evidentiary hearing to assist in its determination. *See id*.

### B. Mr. Kim should be released

#### 1. Section 3142(g)'s factors warrant release.

"From the passage of the Judiciary Act of 1789," federal law has recognized a "traditional right to freedom before conviction" by "unequivocally provid[ing] that a person arrested for a non-capital offense shall be admitted to bail." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Section 3142(e) of the Bail Reform Act, which prohibits detention unless no conditions or combination of conditions will reasonably assure the person's appearance or community safety, "codified" this "traditional presumption favoring pretrial release 'for the majority of Federal defendants.'" *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (quoting S. Rep. No. 225, 98th Cong., 2d Sess., 6-7). The Bail Reform Act's general presumption of release is, therefore, inextricably intertwined with the American legal system's foundational presumption of innocence. "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack*, 342 U.S. at 4; *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985) ("[W]e are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons.").

Accordingly, "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As the movant requesting detention, the government must demonstrate "risk of flight by a clear preponderance of the evidence," or risk of danger by clear and convincing evidence. *Motamedi*, 767 F.2d at 1406. In determining whether the government has met its burden, this Court must consider the:

(1) nature and circumstances of the offense, (2) weight of evidence, (3) person's history and characteristics, and (4) nature and seriousness of any potential danger posed by release. 18 U.S.C. § 3142(g).

Even if the government meets either burden, the Bail Reform Act *still* mandates release, instead permitting detention only when no condition or combination of conditions can "reasonably assure" the defendant's appearance and the safety of any other person and the community. 18 U.S.C. § 3142(e). When conditions exist to reasonably assure appearance and community safety, detention is prohibited. 18 U.S.C. § 3142(b).

"Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019).

Reviewing the factors herein, the government cannot show that Mr. Kim is a danger to the community.[2] Indeed, the Magistrate appeared to consider release to a suitable third-party custodian but only decided not to when the Magistrate found that Mr. Kim's connection to his family was "too attenuated to find this connection is a sufficient deterrent to ameliorate danger."[3]

However, the Magistrate's finding was based upon translation errors and the erroneous decision not to take testimony from Mr. Kim's father, who was also present, or ask that his brother and sister come to court and take testimony from them. Had that been done, the Magistrates finding would likely have been that Mr. Kim has a strong family connection despite the geographic distance between him and his family's residence. At the hearing on this motion, Mr. Kim's brother and sister will be available for questioning by the Court to determine whether they are suitable custodians.

Additionally, the Magistrate did not explore all possible conditions of release in deciding to detain Mr. Kim. Specifically, the Magistrate found that home confinement was not a suitable deterrent. However, undersigned Counsel has learned that the Western District of Washington has a high level of monitoring: Home Incarceration. Per that division's website, Mr. Kim would

---

[2] The Magistrate already made a finding that there were conditions that would assure Mr. Kim was not a flight risk and would return to court.
[3] ECF 17 at 5.

only be permitted to leave home for medical needs, court appearances, and activities approved by this Court. This increased level of detention would provide additional assurances of safety to the community.

Finally, the Magistrate portrayed the Molotov cocktails allegedly used herein as "small bombs."[4] However, a Molotov cocktail is not an explosive device. While it does fit within the definition of explosive or incendiary device[5] the United States Code does not recognize a direct definition of the word "bomb" and instead takes to defining explosive devices and incendiary devices. While is distinction may seem pedantic, a bomb/explosive device causes an explosion. Explosions create pressure from rapid detonation and expansion of flammable material. An incendiary device, by contrast, creates fire but does not explode. To characterize the breaking of a glass bottle and spreading of fire as an explosion exaggerates what occurred disproportionately. This distinction is important because the mischaracterization of the devices used in this allegation was a justification for detention in this case.

### III.  Conclusion

Mr. Kim requests that this Court release him with conditions originally contemplated by Pretrial Services but with the home incarceration, rather than confinement, as that will reasonably assure safety to the community when combined with his brother and sister acting as third-party custodians.

DATED this 3rd day of April 2025.

Respectfully Submitted,

/s/ Adam Solinger
Adam M. Solinger
Attorney for Defendant

---

[4] ECF 17 at 5.

[5] 18 U.S.C. § 232(5)